IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF:<br><br>**JOSE L. LIZARDI ORTIZ**<br><br><br>Debtor in Possession | Case No. 15-03076 (MCF)<br><br><br><br>CHAPTER 11 |

## DEBTOR'S REPLY TO THE HANDS' OBJECTION
## TO APPOINTMENT OF SPECIAL COUNSEL

**TO THE HONORABLE COURT:**

**COMES NOW**, Jose L. Lizardi (hereinafter, the "Debtor"), through the undersigned attorney, and very respectfully **STATES** and **PRAYS**:

### INTRODUCTION

The Debtor requested the appointment of, the Law Firm of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C. (hereinafter referred to as "Special Counsel"), through Attorneys Cesar R. Rosario Vega and other attorneys, as special counsel to provide legal advice to the Debtor in the specialized field of Employee Retirement Income Security Act of 1974, as amended ("ERISA") and in any and all matters related to the "pension plan" (as such term is defined in Section 3(2) of ERISA) "retirement funds" deposited in a Charles Schwab Account, considered "retirement funds" under the Bankruptcy Code. On June 12th, 2015, an Objection to Appointment of Special Counsel was filed by Susan Skelly-Hand and Patrick Hand, on behalf of Rachel E. Hand, (hereinafter the "Hands"), alleging that such appointment represents no benefit to the estate.

The Hands, Plaintiffs to a malpractice suit against the Debtor, intend to foreclose on Debtor's "retirement funds" and claim that such funds are not protected by the anti-alienation provision of ERISA. However, it is Debtor's position that these "retirement funds" are property of Debtor's bankruptcy estate which have been claimed as "exempt" under Section 522(d)(12) of

the Bankruptcy Code. Furthermore, the referred "retirement funds" are also protected by the provisions of ERISA. Certainly, the ERISA's anti-alienation clause constitutes a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law.[1]. Nevertheless, under the Chapter 11 Reorganization Plan the Debtor expects to use these "retirement funds", in whole or in part, to fund a Payment Plan to his creditors.

**At this moment, it is necessary to highlight the fact that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") brought clarity to debtor and creditor rights in connection with "retirement funds" in a federal bankruptcy proceeding. Prior to BAPCPA, debtor and creditor's rights with regards to "retirement funds" were in a state of confusion both within and outside of federal bankruptcy. After the enactment of BAPCPA, the protection of "retirement funds" under the Bankruptcy Code was clarified and enhanced for the benefit of debtors. The Hands have been relying on certain case law prior to BAPCPA that was rendered inapplicable in the context of bankruptcy.**

The Hands have tried to foreclose these "retirement funds" in the State Court of New York. In New York, the Hands allege that **these "retirement funds" are not ERISA funds**, therefore, the Hands argue that **such funds can be attached** for the collection of their claim. On June 28, 2012 a judgment was entered by a jury, against Debtor in the total amount of $3,152,572.90. As of this date, more than $2,000,000 have been paid to Plaintiffs and an additional amount of $410,000 has been awarded by the New York State Medical Indemnity Fund. However, they still

---

[1] See, Patterson v. Shumate, 112 S. Ct. 2242 (1992). See also, Raymond B. Yates, M.D., P.C. Profit Sharing Plan et alHendon Trustee, 124 S. Ct. 1330 (2004). It should be noted, that contrary to the Hands' argument to the effect that the Debtor is not entitled to the protections of ERISA as a result of previous distributions to other participants, in the instant case, the third party administrator for the "retirement funds" has determined that other participants are still entitled to "retirement funds" from the ERISA plans. In any event, the argument presented by the Hands is not supported by the holding of the United States Supreme Court in Yates, Id. See, Exhibit A – Don Scott Unsworn Statement dated January 7, 2015.

2

seek the outstanding balance of their claim in the amount of $742,572.90 from Debtor's "pension plan" and/or "retirement funds" at Charles Schwab. Multiple offers for settlement were made, but declined by the Hands.

Now, in this bankruptcy proceeding the Hands alleged that the employment of a special counsel for ERISA within the present bankruptcy context, poses a conflict of interest between the Debtor and the Bankruptcy estate. See, Docket No. 35 at ¶4.

In any event, the positions taken by the Hands regarding the nature of the "retirement funds", work against their own objection to the appointment of this professional. It is obvious from the objection per se, that there is an issue as to the nature of the "retirement funds" for which the Debtor needs the advice of special counsel in this matter.

In general, the provisions of Section 327(a) of the Bankruptcy Code are threshold requirements to be met in an application by a "trustee" or "debtor in possession"[2] for employment of a professional person to represent it or assist it "in carrying out the trustee's duties under this title.". 11 U.S.C. §327(a). In particular, Section 327(a) authorizes the employment of professional persons only if such persons do not hold or represent an interest adverse to the estate and are "disinterested persons". 3 Collier on Bankruptcy ¶ 327.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). As it will be clearly demonstrated below and as it appears from the Verified Statement executed by the Special Counsel at Docket 17, the Law Firm of Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C. is a "disinterested person" pursuant to Section 101(14) of the Bankruptcy Code and does not represents an adverse interest to the estate.

It should be noted that the Hands are using this objection to the appointment of Special Counsel to supplement their request to lift the automatic stay[3] in order to continue litigation in the

---

[2] Section 1107(a) of the Bankruptcy Code 'places a debtor in possession in the shoes of a trustee in every way.' 3 Collier on Bankruptcy ¶ 327.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010)
[3] See, Dkt. 13 Motion to Lift Stay and Dkt. 20 Debtor's Opposition.

3

State Court of New York for the post judgment execution of their claim against the "retirement funds". However, any determination as to the nature of the "retirement funds" at Charles Schwab is of the <u>exclusive</u> jurisdiction of the Bankruptcy Court. Any attempt from the Hands to continue the post judgment execution of their claim is stayed. And any action by the Hands to remove any related matter under the Bankruptcy Code to the State Court of New York is against the mandate of the Bankruptcy Court and against the exclusive jurisdiction of this Court.

## THE FACTS

1. The Debtor is a doctor specialized in Obstetrics and Gynecology, and for twenty-four (24) years, was fully dedicated to his profession at Postdam, New York. Due to several factors, amongst which was his health, Dr. Lizardi retired in December 2013 and moved from Postdam, New York to San Juan, Puerto Rico, where he has been residing for over one year.

2. After the commencement of his practice, Dr. Lizardi established a "retirement fund" for him and his employees.

3. During his twenty-four (24) years as a gynecologist, Dr. Lizardi assisted over 7,000 births.

4. On February 25th, 1996 while covering shifts for one of his colleagues who was on vacations, Dr. Lizardi assisted Mrs. Hand in her labor. The baby weighted more than expected and what was supposed to be a normal birth became complicated due to the height and weight of the mother and the weight of the baby. Babies in these cases usually die, but baby Hand was born alive although one of her arms have a 30% disability, limited to the ability to raise her arm. Today, Rachel E. Hand is a young beautiful girl.

5. Six years after the baby was born, Dr. Lizardi was a Defendant to a malpractice suit filed by the Hands. On June 28, 2012 judgment was entered by a jury, against Dr. Lizardi in the total amount of $3,152,572.90. As of this date, more than $2,000,000 have been paid to

4

Plaintiffs and an additional amount of $410,000 has been awarded by the New York State Medical Indemnity Fund. However, they still seek the outstanding balance of their claim in the amount of $742,572.90 from Dr. Lizardi's "retirement funds" at Charles Schwab.

6. The position of the Hands is that Debtor's "retirement funds" at Charles Schwab are not protected by the ERISA anti- alienation provisions, and that therefore, they can execute the balance of their judgment from these funds, in a post judgment litigation stayed by this Bankruptcy Proceeding

7. If these funds "are" or "are not" protected under the provisions of ERISA is a fact to be determined by this Honorable Court. The Special Counsel has considerable experience in ERISA and is well qualified to assist and advise the Debtor on this issue. The specialized services are needed in the benefit of Debtor and Debtor's estate.

8. Benefit to the estate is an ample concept. The requirement of identifiable, tangible and material benefit to the estate, does not have to result in accretion of value to the estate, rather, if the professional is pursuing a legitimate purpose or aim, the benefit to the estate is accomplished The Special Counsel services cannot be considered "services against the bankruptcy estate" as alleged by the Hands. This limited interpretation of the services to be received does not take into consideration the potential benefits to creditors, and on these grounds the objection should be denied

### THE LAW

9. First of all, the automatic stay stops the Hands from enforcing any post judgment execution of assets to collect whatever amounts are still owed. Therefore, any request to continue litigation in the New York Courts with this intend is stayed. ***Section 362(a)(2) of the Bankruptcy Code specifically provides a stay against: the enforcement, against the debtor or against property of the estate, of a judgment obtained before the***

*commencement of the case under this title…See* 11 USC §362

10. "Property of the Estate" pursuant to Section 541(a)(1), is comprised of all of the legal or equitable interests of the debtor in property, as of the commencement of the case, including "retirement funds" protected under the provisions of ERISA.

11. 11 USC §541(b) delineates which property is not to be considered property of the estate, and particularly excludes from property of the estate, **money withheld** by employers **or received by employers**, which **was to be placed** in the employees' pension plans. See Section 541(b)(7) of the Bankruptcy Code. The reason is that these funds are considered "trust funds" and not funds property of the employer.

12. In their Objection, the Hands allude to Section 541(b)(7) as to imply that the Bankruptcy Code explicitly excludes ERISA funds from Debtor's Bankruptcy Estate. This statement is erroneous.

13. The "retirement funds" at Charles Swab are funds that have been already deposited for the benefit of the Debtor in "pension plans", and as such, are property of the bankruptcy estate. As property of the estate, these funds may be claimed as exempt assets by an individual Debtor. See, Section 522(d)(12).

14. Exemptions come into play **only** when property is included in the estate and the debtor seeks to exclude such property from the reach of creditors. In re Sewell, 180 F.3d 707 (5th Cir. 1999).

15. Pursuant to section 522(d)(12), the Debtor claimed such exemption, but it does not mean that he cannot use these funds in the Plan of Reorganization under a Chapter 11.

16. Therefore, the Hand's analysis of Sections 541 and Section 522 to conclude that the services of Special Counsel will be of no benefit to the estate is simply erroneous and should be denied.

17. Recently, the United Stated Supreme Court has defined the term "retirement funds" in the context of the applicable rules of Section 522 of the Bankruptcy Code as "sums of money set aside for the day an individual stops working." See, Clark v. Rameker, 134 S. Ct. 2242 (2014).

18. In general, BAPCPA exempts from the bankruptcy estate the "retirement funds" that satisfy the applicable requirements of the U.S. Internal Revenue Code of 1986, as amended ("IRC"). If the "retirement funds" received a favorable determination from the Internal Revenue Service ("IRS") and that determination is in effect as of the date of the filing of the petition those funds shall be presumed to be exempted from the estate. In contrast, if the "retirement funds" did not receive a favorable determination letter from the IRS, the funds are exempt from the estate if the Debtor demonstrates that: (i) no prior determination to the contrary has been made by a court or the IRS; and (ii)(I) the "retirement fund" is in substantial compliance with the applicable requirements of the IRC; or (II) the "retirement fund" fails to be in substantial compliance with the applicable requirements of the IRC and the debtor is not materially responsible for that failure.

19. In any event, the Bankruptcy Court has exclusive subject matter jurisdiction to determine the status of "retirement funds" under the Bankruptcy Code. Similarly, the Bankruptcy Court has exclusive subject matter jurisdiction to determine the status of the ERISA anti-alienation clause under the Bankruptcy Code.

20. Furthermore, in the case of "retirement funds", contrary to the case of an inherited IRA, "any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the [IRC] or that is described in clause (ii) **shall not cease to qualify for exemption under [522(b)(3)(C)] or [522(d)(12)]** by reasons of such distribution". 11 U.S.C. §522(b)(4)(D)(i). (Emphasis added). Consequently, upon distribution after plan

7

termination Section §522(b)(4)(D) provides continuation of the exemption under Section 522(d)(12) during the period available for rollover as provided in the Tax Law.

21. The Hands allege that employment of Special Counsel will cause a "conflict" between Debtor and Debtor's estate which enjoins Special Counsel to represent Debtor pursuant to the provisions of Section 327(e). See, Docket No. 35 at ¶3.To the contrary, Special Counsel intends to advise Debtor in the specialized area of ERISA in order to provide additional funds to the Plan of Reorganization and therefore, additional funds for creditors' distributions and in full compliance with the provisions of Section 327(a).

22. In particular, Section 327(e) provides that "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. §327(e).

23. The four requirements for employment as special counsel under Section 327(e) are: (i) the proposed special counsel must have represented debtor previously; (ii) the proposed special counsel must be employed by the trustee only for a limited time and for a special purpose; (iii) the proposed representation must be in the best interest of the estate; and (iv) there must be no conflict with the debtor or the estate arising from the matters for which the trustee seeks to engage special counsel. Id.

24. It is evident that the provisions of Section 327(e), argued by the Hands, are totally inapplicable to the instant case since Special Counsel did not represent Debtor prior to the Application for Employment of Special Counsel.

25. In contrast, Section 327(a) provides that: "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants,

8

appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title". 11 U.S.C. §327(a).

26. Section 101 prescribes three tests that, if satisfied by a person under consideration, renders that person "disinterested".[4] The section provides that a person is a disinterested person if the person:

   (A) is not a creditor, an equity security holder, or an insider;

   (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

   (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or any investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason. 11 U.S.C. § 101(14).

27. Courts interpreting § 101(14) have required that professionals be free of any "scintilla of personal interest" which might impact upon the professional's decisions in estate matters. In re Asher, 168 B.R. 614, 617 (Bankr.N.D.Ohio 1994). Professionals are expected to tender "undivided loyalty" and provide "untainted advice." Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994).

28. In the instant case, it is evident that Special Counsel has no personal interest in the estate since it is not a creditor of the estate, nor has been related to Debtor prior to the submission of the Application of Employment of Special Counsel. See, Docket No. 17. Furthermore,

---

[4] 3 Collier on Bankruptcy ¶ 327.04[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010).

Special Counsel will advise Debtor in connection with the "retirement funds" for Debtor to be able to propose a feasible plan of reorganization.

29. The phrase "interest materially adverse to the interest of the estate" is not defined in the Code. Courts interpret it as "the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate, real." In re Prince, 40 F.3d 356 (11th Cir. 1994). See also In re Roberts, 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd in part and rev'd in part*, 75 B.R. 402 (D.Utah 1987).

30. In determining whether the requirements of disinterestedness and absence of a materially adverse interest have been met, the court of appeals of the First Circuit examines whether the targeted interest creates a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." In re Martin, 817 F.2d 175, 180 (1st Cir. 1987).

31. Adverse interests have been found in instances where the professional represented the debtor corporation's officers[5], was a prepetition creditor of the debtor's estate[6], was actually acting on behalf of a major equity holder of the estate[7], co-owned land with the debtor[8] and offered financing to one of the bidders for the estate assets[9]. This is not the case here.

32. It is Debtor's position that contrary to the Hands' assertions contained in their Objection

---

[5] See, *e.g.*, In re Tauber on Brodway, Inc., 271 F.2d 766 (7th Cir. 1959).
[6] See, *e.g.*, Sholer v. Bank of Albuquerque, 68 B.R. 584 (Bankr. D.N.M. 1986).
[7] See, *e.g.*, In re Git-N-Go, Inc., 321 B.R. 54 (Bankr. N.D. Okla. 2004).
[8] See, *e.g.*, In re Patterson, 53 B.R. 366 (Bankr. D. Neb. 1985).
[9] See, *e.g.*, In re West Delta Oil Co., 432 F.3d 347 (5th Cir. 2005).

to Appointment of Special Counsel, Special Counsel has no adverse interest with the bankruptcy estate. Special Counsel is not a prepetition creditor of the estate and had no other relationship with Debtor before the instant bankruptcy petition filing.

33. Moreover, employment of Special Counsel, who has expertise in the area of ERISA law, particularly in the treatment and distributions of pension plan "retirement funds", serves the purpose of allowing the estate to take advantage of his specialized knowledge and experience which will benefit the estate.

34. In particular, Debtor seeks to employ the Special Counsel to provide, among others, "legal advice in Debtor's interest in the employee pension benefit plans as such terms are defined in ERISA." See, Docket No. 17 at ¶4.

35. Special Counsel's knowledge and expertise is **necessary** for Debtor to use the "retirement funds" as a source of cash flow to fund Debtor's Chapter 11 Plan of Reorganization. Such actions will undoubtedly benefit the estate and the interest of all creditors of the estate.

36. The requirement of identifiable, tangible and material benefit to the estate, does not have to result in accretion of value to the estate, rather, if the professional is pursuing a legitimate purpose or aim, as in the instant case, the benefit to the estate is accomplished. *See* 2A Bankr. Service L. Ed §16B:367 *citing* In re Broughton, LTD Partnership, 474 BR 206, 56 (Bankr.ND. Tex, 2012); In re MSB Energy, Inc., 450 BR 659, 55 (Bankr. S.D. Tex. 2011).

37. Finally, Debtor's transactions with Special Counsel are subject to Section 329 of the Bankruptcy Code and the sound discretion of this Honorable Court. 11 U.S.C. §329.

## CONCLUSION

The "retirement funds" in the benefit of a Debtor are property of the estate. The Debtor needs special advice as to the use of these funds deposited in the Charles Swab account and that special advice is to be provided by Special Counsel.

It is a fact that the "retirement funds" in the Charles Swab Retirement Account have been requested as exempted, but independently of such exemption, the Debtor can use these funds to fund a Plan of Reorganization, either in whole or in part, in the benefit of all creditors and not only the Hands. The Hands were offered considerable amounts from these funds prior to the filing of the bankruptcy petition to settle the pending balance of their tort judgment and at all times they rejected. They wanted it all, in detriment of all other creditors. The Hand's position is not only in detriment of all other creditors, but is against the provisions of the Bankruptcy Code.

**WHEREFORE**, for the above stated reasons, the Debtor prays for the denial of the Hand's objection and the appointment of Special Counsel, who has considerable experience in ERISA and is well qualified to assist the Debtor in this issue.

Respectfully submitted, In San Juan, Puerto Rico this 24 day of June 2015.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing through the CM/ECF system, which will send notification of such filing to the parties therein registered, including the UST and the Hand's through their attorney of record.

                         **C. CONDE & ASSOC.**
                         254 San José Street, 5th Floor
                         Old San Juan, Puerto Rico 00901
                         Telephone: 787-729-2900
                         Facsimile: 787-729-2203
                         E-Mail: *condecarmen@microjuris.com*
                         /s/ Carmen D. Conde Torres
                         **Carmen D. Conde Torres**
                         **USDC No. 207312**



STATE OF NEW YORK
SUPREME COURT          COUNTY OF ST. LAWRENCE

SUSAN SKELLY-HAND and PATRICK HAND,
as Parents and Natural Guardians of
RACHEL ELIZABETH HAND, an Infant,

                              Plaintiffs,

- against -

JOSE LIZARDI,

                              Defendant.

AFFIDAVIT IN FURTHER
OPPOSITION TO MOTION
PURSUANT TO CPLR
ARTICLE 52

Index No. 111075/2003

Hon. David R. Demarest, J.S.C.

STATE OF OREGON       )
                              ) ss.:
COUNTY OF MULTNOMAH )

        DONALD SCOTT, APA, being duly sworn, deposes and says as follows:

        1.    I am an Accredited Pension Administrator employed by Associated Pension Consultants, the third-party administrator retained by defendant Jose Lizardi ("Dr. Lizardi") to provide administrative services to Dr. Lizardi with respect to the Jose L. Lizardi, M.D. 401(k) Profit Sharing Plan (the "401(k) Plan") and the Jose L. Lizardi, M.D. Defined Benefit Pension Plan (the "Benefit Plan") sponsored by Dr. Lizardi for himself and the employees of his medical practice. I submit this affidavit in response to allegations raised in correspondence dated January 5, 2015 from Christopher K. Mills, Esq., counsel to Plaintiffs in this case, to the Court.

        2.    As an initial matter, please note that while Associated Pension Consultants maintains an office in Hauppauge, New York, from which I service my clients located on the East Coast, I reside in Portland, Oregon. While I travel to the New York office on a quarterly basis, I maintain my office in Portland, Oregon. Further, I executed my December 11, 2014 affidavit in Oregon. Thus, the notary public who witnessed my signature did so in Oregon and, based on the terms of her notary stamp, is commissioned as a notary public by the State of

Oregon.

3. As noted in my December 11, 2014 affidavit, Dr. Lizardi, in his capacity as the owner of his medical practice, sponsored two pension plans in which he and his employees were eligible to participate. One was the 401(k) Plan and the other was the Benefit Plan.

4. Based upon the terms of the plan documents which set forth the terms, conditions and limitations of the plans, both plans were ERISA-qualified.

5. Pursuant to the terms of the plans, the cessation of Dr. Lizardi's medical practice triggered an obligation to terminate both of the plans.

6. Despite the distinction between the Benefit Plan and 401(k) Plan I noted in my December 11, 2014 affidavit, Mr. Mills seems to continue to misunderstand that distinction.

7. I must correct one statement made in my affidavit with respect to the 401(k) Plan. I averred in paragraph 12 of my affidavit that "all funds in the 401(k) Plan have been distributed to plan participants except for those funds belonging to Dr. Lizardi, pending payment of all costs associated with the Plan." In fact, based on my review of Mr. Mills' January 5, 2015 letter, it appears that the distributions to 401(k) Plan participants were not made until December 12, 2014. Thus, as of the date of my affidavit, there were employee participants in that plan in addition to Dr. Lizardi. In any case, Mr. Mills' claim that my affidavit was timed to obfuscate the status of the 401(k) Plan is patently untrue as my averment, although incorrect (by one day) when made, was actually consistent with Mr. Mills' claim that Dr. Lizardi was the only remaining participant in the 401(k) Plan. In other words, as of December 11th there were multiple remaining participants in the 401(k) Plan. To the extent I incorrectly said only Dr. Lizardi's funds remained, that statement was consistent with Plaintiffs' argument that only Dr. Lizardi's funds remained in the 401(k) Plan. As the Charles Schwab letter indicates, that was not the case and the 401(k) Plan included employee participants in addition to Dr. Lizardi as of December 11,

2

2014.

8. My statement that there were participants in the Benefit Plan in addition to Dr. Lizardi was true when made on December 11th and continues to be true.

9. Based on my knowledge of the retirement plans sponsored by Dr. Lizardi's practice and a review of the December 26, 2014 letter from Charles Schwab to Conor Brownell, which was included with Mr. Mills' January 5, 2015 letter to the Court, the account ending in 2358 is the Benefit Plan. As of the date of this affidavit, the employees continue to be participants in the Benefit Plan and will continue to be until all funds in the Benefit Plan account have been distributed to all participants, including Dr. Lizardi. Based on my analysis of that account, and subject to my receipt and review of the December 31, 2014 statement for that account, there is approximately $60,000 in funds in that account attributable and payable to all plan participants including Dr. Lizardi.

10. Funds continue to be held in the Benefit Plan for all participants because there are funds in excess of the projected distributions to all participants in the plan. That is, benefits for all participants are projected based on age, interest rate assumptions and time until retirement. To the extent that the assets in the plan perform better that the assumed returns, there are funds in the plan in excess of the projected benefits. That surplus needs to be allocated and distributed to all plan participants. The value of the Benefit Plan exceeds the benefits that had been projected, and that surplus constitutes the additional funds in the Benefit Plan to be distributed to all of the participants.

11. At the time I executed my affidavit, I was unaware of the date of distributions to plan participants. Requests for distribution from the plans are made directly by the participants after authorization by the plan sponsor; in this case, Dr. Lizardi's practice. As the third-party administrator, neither I nor my firm deals with Charles Schwab as the custodian of the

3

investment accounts regarding distributions. Thus, I did not know, and had no way of knowing, when distributions were to be made from the 401(k) Plan or the Benefit Plan. I had assumed that the 401(k) distributions had been made to employees, and my December 11, 2014 affidavit was based on my knowledge as of the date of its execution. Since I had no way of knowing when distributions were to be made from the plans, I would have had no way to "time" my affidavit nor would I have done so in an effort to mislead the Court as to the status of the plans. Further, until I received Mr. Mills' January 5, 2015 letter and attachment from Dr. Lizardi's counsel, I did not know the dates of distribution to participants since I have not yet received the year-end statements for the plans.

_____
DONALD SCOTT, APA

Sworn to before me this
7th day of January, 2015

_____
Notary Public
State of: Oregon
County of: Washington

OFFICIAL SEAL
LYNNETTE A TURNER
NOTARY PUBLIC-OREGON
COMMISSION NO. 465957
MY COMMISSION EXPIRES FEBRUARY 27, 2016

108264

4