## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN THE MATTER OF:** | Case No. 15-3076 (ESL) |
| **JOSE LIZARDI** | Chapter 11 |
| **Debtor** | |

### MOTION TO DISMISS

TO THE HONORABLE COURT:

COMES NOW creditors Susan Skelly- Hand, Patrick Hand and Rachel Hand **(hereinafter "The Hands")** represented by the undersigned attorney and respectfully set forth and prays as follows:

### INTRODUCTION

The appearing creditors request dismissal of the instant bankruptcy petition for cause, upon the existence of bad faith and abuse of bankruptcy process under 11 USC § 1112(b).

### FACTUAL BACKGROUND

1.    Mr. Lizardi is a doctor specialized in OB/GYN

2.    Mrs. Susan Skelly- Hand was his patient.  After the birth of her second child, Rachel, filed a medical malpractice and tort complaint in the State of New York against Dr. Lizardi where a jury granted a $3, 152,572.00 in compensation for the family.   Skelly Hand, et al v. Lizardi, St. Lawrence County IAS#44-1-2003-0156, Index 111075, in the state of New York The Judgment was confirmed on appeal on November, 2012.

1

3.      Dr. Lizardi's malpractice insurance policy paid $2,000,000 of the judgment, leaving around $1,2M plus interests uncovered.

4.      Immediately after the judgment was confirmed on appeal, Dr. Jose Lizardi filed his first bankruptcy Chapter 11 petition in the Northern District of New York on December 21, 2012. Bank Case 12-62352, assigned to Judge Diane Davis.

5.      Bank. Case 12-62352 was dismissed after one year on December 31, 2013.  This Honorable Court may take Judicial Notice of the case under Rule 201(b) and (d) of the Federal Rules of Evidence. 28 U.S.C. 201

6.      Upon reviewing the docket of Dr. Lizardi's first bankruptcy case the court will be able to ascertain that in case No. 12-62352 in the Northern District of New York[1], Dr. Lizardi:

a.   Filed a first Plan of Reorganization and a Disclosure Statement dated May 10, 2013.  *See* Dockets No. 88, 89.

b.   An Amended Disclosure Statement was presented on July 10, 2013, Docket No. 101. **Exhibit 1**. The Amended Disclosure Statement was approved by an order entered on August 7, 2013 at Docket No. 104. **Exhibit 2**.

c.   The Amended Disclosure Statement approved by the court in connection to Debtor's Operating Reports to that date[2], in summary, proposed:

1.   Payment in full to unsecured creditors.

2.   Gross receipts from January to June of $574,532.36 from the operation of the medical practice

3.   Liquidation analysis was no greater than $275,000.

---

[1] Copy of the Docket Summary Report is included herewith as **Exhibit 10** for better reference.
[2] Docket No. 103- operating Rerpot for June, 2013

2

    4.   Withdrawals for personal expenses and transfers to personal checking account, $124,338.42 paid to Debtor.

d.  A 2nd Amended Disclosure Statement (third disclosure statement) was filed on September 5, 2013, Docket No. 119. **Exhibit 3**.

e.  A 2nd Amended Plan of Reorganization was also filed on September 5, 2013, Docket No. 121.  **Exhibit 4**.

    1.   The new plan reduced the dividend previously proposed to unsecured creditors from 100% to 33%.

    2.   Gross receipts from January to September of $931,694 from the operation of the medical practice.

    3.   Liquidation analysis was no greater than $275,000.

    4.   Withdrawals for personal expenses, $267,093 paid to him up to 2013.

    5.   $143,941.01 payments to his pension and profit sharing plan.

f.  The operating report for the month of September 2013, the last one filed in that case, also reveals owners draws in the amount of $58,557.33, transfers to personal account in the amount of $18, 259.28; payments to his pension plan in the amount of $30,864.13, transfers to "PR ending 9/"in the amount of $18,795.36and a wire transfer directly to Ana Grana in the amount of $1,059.28. *See* Docket No. 148 **Exhibit 5**.

g.  The US Trustee filed a motion to dismiss on November 26, 2013 on the grounds that the monthly operating reports reflected that Dr. Lizardi incurred in significant expenditures without any explanation. *See* Docket No. 151 (Case No. 12-062352) **Exhibit 6**.

h.  In the motion to dismiss the US Trustee detailed the following expenditures that were not explained by Debtor:

    1.   Debtor transferred over $50,000 to what appears to be family and friends since his filing in January, 2013.

    2.   On September 17, 2013, Debtor dispersed $50,000 for what is described as an "Owner's Draw". The Debtor failed to sufficiently explain and document this transaction.

i.  Instead of contesting the allegations of the US Trustee, in his *Response to motion to Dismiss (Debtor's Statement in Response to U.S. Trustee's Motion to Dismiss)* Debtor requested the voluntary dismissal of the case.  *See* Docket No. 156. **Exhibit 7**.

j.  The dismissal of Dr. Lizardi's first bankruptcy petition was requested at the same time Debtor decided to close his medical practice office in New York.  See Letter sent by Mr. Lizardi to his patients.  **Exhibit 8.**

k.  The hearing to discuss the request for dismissal was held on December 17, 2013.

l.  The bankruptcy court in New York granted the U.S. Trustee's request for dismissal for cause in the order entered on December 31, 2013, under 1112(b)(4)(A). *See* Docket 162. **Exhibit 9**.

7.  On April 28, 2015 Dr. Lizardi filed the present bankruptcy in the District of Puerto Rico.

8.   At the 341 meeting of creditors in this case, held on June 29, 2015, and later reaffirmed in the Disclosure Statement filed at Docket 67- page 11- Debtor admitted that he created a Limited Liability Company in Puerto Rico on 2013 named Pylates Gyn, LLC with the intent to develop an anti- aging and wellness center.

9.  Copy of the Certificate of Creation of the Limited Liability Company was submitted as Exhibit 4 to Debtor's Disclosure Statement.  The Certificate of Creation reveals that Pilates Gyn LLC was registered on October 5, 2013.  *See* Docket No. 67 at page 34.

10.  Debtor admitted that Pylates Gyn, LLC is the owner of two residential properties in Puerto Rico. Debtor indicated at the 341 meeting that he provided $234,000 to fund the Limited Liability Company and that he is the owner of 34% of its shares.  Debtor claimed $234,000 as the value of his participation on the LLC.  *See* also Amended Schedule B. at Docket No. 43.

11.     Debtor also admitted at the 341 meeting of creditors that his wife, Maritza Morales

Bermudez, and his stepdaughter Ana Grana Morales are the owners of 33% each of the

shares of Pilates Gyn, LLC.

12.     From Debtor's admission in his Disclosure Statement, at the time of the filing of the

instant Motion to Dismiss, Pilates Gyn LLC has no clients, no business and no income. See

pages 11-12 and 55 at Docket No. 67.

13.     On **October 17, 2013**, Pylates Gyn LLC acquired for the amount of $95,000, a

residential property identified as:

> URBAN: Lot located in Barrio Retiro of the municipality of San
> Germán, Puerto Rico, identified as #17 in population order of
> the plans corresponding to Urbanización Vivoni, with an
> expanse of 467.87 square meters. With bounds on the North,
> along 114.00 meters, with lot owned by Raymond Cintrón; on
> the South, along 84.07 meters with the property owned by
> Rubén Figueroa and that owned by Miguel Laracuente; to the
> East, along 10.08 meters, 11.04, and 2.13 meters with D Street of
> the urbanization; and on the West, in 76.03 meters, with the
> property owned by Ramón Tosas and that owned by Santos
> González.
> IT HOLDS: A concrete house for residential purposes.
>
> ORIGIN: Segregated from plot #949, inscribed on page 188th of
> volume 52 in San Germán. Plot #5543.

14.     At the time of the purchase, the registered title owners of the property identified as

Plot #5543 in San German, Puerto Rico, were Carlos Alberto Grana Santiago and Maritza

Morales Bermúdez[3], Dr. Lizardi's wife.  The property was under a foreclosure proceeding.

15.     **On October 29, 2013**, Pylates Gyn, LLC purchased a second residential property,

for the aggregate amount of $221,337.38[4], identified as:

---

[3]See Exhibit 11 Title Search.

Plot#16544, registered on page 8 of volume 432 in Carolina (Carolina, Section I)

Horizontal Property: Apartment #1105, located on eleventh floor of the building known as Surfside Mansions. Located at kilometer 2 hectometer 1 of the state street 3187, Isla Verde Carolina.    The property is a two bedrooms, two baths apartment with foyer, living, dining, kitchen and closet.

16.    The two properties purchased by Pylates Gyn LLC, as described above, are not identified as commercial properties in the correspondent title searches obtained at the Registry of the Property of Puerto Rico. *See* Exhibits 11 and 12.

17.    Debtor signed the bankruptcy schedules, statement of financial affairs, and amendments thereto filed in the captioned bankruptcy case attesting that the information therein was true and correct.  *See* Dockets No. 1 and Docket 43.

18.    Debtor testified under penalty of perjury at the meeting of creditors that the schedules, statement of financial affairs and amendments were true and correct to the best of his knowledge and belief.

19.    The transfer of monies to Pilates Gyn, LLC and its acquisition of the above mentioned properties took place during the pendency of Bankruptcy Case 12-62352 in the Northern District of New York.

20.    Debtor did not request leave of the New York bankruptcy court in case 12-62352 to transfer the moneys or to create a new corporate entity outside of the New York jurisdiction.  Debtor did not inform about his interest on such entity during the pendency of his first bankruptcy petition.

---

[4]See Exhibit 12 Title Search.

21.     In this case, Debtor failed to disclose that the transfer of the funds to Pilates Gyn,

LLC not only took place during the pendency of his first bankruptcy petition but also was

made within the two years prior to the filing of the instant petition.  *See* Docket # 43,

Statement of Financial Affairs, Item 10, which reflects only a transaction of shares sold at

NBT Bank Corp. in the amount of $32,341.87 in April 7, 2015.

22.     During the pendency of the state case of <u>Skelly Hand, et al v. Lizardi</u>, St. Lawrence

County IAS#44-1-2003-0156, Ind*ex* 111075, in the state of New York, the judge entered an

order for Charles Schwab to give notice to plaintiffs' counsel of every withdrawal made by

Mr. José Lizardi from his accounts.  The notice must include the amount of the withdrawal

and where the withdrawals have been sent.  **Exhibit 17.**

23.     In compliance with the above mentioned order, Charles Schwab issued several

notices of withdrawals to plaintiffs Skelly- Hand counsel during the litigation up to the

filing of the instant petition.  The transfers of moneys listed below, that he made to Ana

Grana Morales[5] from 2014 to 2015 were not listed by Debtor in his Schedules or his

Statement of Financial Affairs, and their amendment thereto[6]:

| | | |
|---|---|---|
| a. | January 27, 2014 | $25,000[7] |
| b. | May 15, 2014 | $25,000[8] |
| c. | June 19, 2014 | $15,000[9] |
| d. | July10, 2014 | $20,000[10] |
| e. | August 29, 2014 | $18,000[11] |

---

[5]By information and belief Ana Grana Morales is Maritza Morales' daughter and Debtor's stepdaughter,
[6]See Schedules and Item 3(c) and 10 of Statement of Financial Affairs at Docket No. 43.
[7]*See* **Exhibit 13**, Charles Schwab's Notice of withdrawals on behalf of Jose Lizardi dated May 15, 2014
[8]*See* **Exhibit 13**, Charles Schwab's Notice of withdrawals on behalf of Jose Lizardi dated May 15, 2014
[9]*See* **Exhibit 14**, Charles Schwab's notice of withdrawals on behalf of Jose Lizardi dated December 26, 2014
[10]*See* **Exhibit 14**, Charles Schwab's notice of withdrawals on behalf of Jose Lizardi dated December 26, 2014
[11]*See* **Exhibit 14**, Charles Schwab's notice of withdrawals on behalf of Jose Lizardi dated December 26, 2014

f.  January 9, 2015                    $76,004[12]

g.  January 14, 2015                   $55,000[13]

h.  February 18, 2015                  $120,000[14]

24.    The transfers made to Ana Grana Morales during 2014 and 2015, as notified by
Charles Schwab, amount to $354,004.  See Exhibits 13-16.

25.    The transfers, as presented by Charles Schwab, should be considered in bad faith
with the intent to hinder and conceal assets from his creditors, since Debtor did not receive
equivalent value in exchange for the transfer of moneys to Pilates Gyn, LLC.

26.    The transfers should be considered in bad faith with the intent to hinder and
conceal assets from his creditors since Debtor did not receive equivalent value in exchange
for the transfers made to Ana Grana Morales.

27.    Debtor testified at the 341 meeting of creditors that he drives a 2014 Mercedes Benz
E-350 owned by Pilates Gyn LLC. In January 2014[15], Debtor ordered the withdrawal of
$85,589.00 to be paid to Garage Isla Verde, through the latter's Oriental Bank account.
This transaction constitutes a transfer and the vehicle is not listed as part of his assets, also
the transaction was not listed in Item #3 (c) or #10 of the Statement of Financial Affairs.
*See* Schedule B at Docket No 1 and Docket No. 43.

28.    During the pendency of the case Skelly Hand, et al v. Lizardi, St. Lawrence County
IAS#44-1-2003-0156, Index 111075, in the state of New York,  in 2006 Debtor transferred
his house located in Postdam, New York to a trust under his late wife's name.  Such transfer

---

[12]*See* **Exhibit 15**, Charles Schwab's notice of withdrawals on behalf of Jose Lizardi dated January 22, 2015
[13]*See* **Exhibit 15**, Charles Schwab's notice of withdrawals on behalf of Jose Lizardi dated January 22, 2015
[14]*See* **Exhibit 16**, Charles Schwab's Notice of withdrawals on behalf of Jose Lizardi dated February 27, 2015.
[15]*See* **Exhibit 13** Notice from Charles Schwab dated May15, 2014 regarding the withdrawals made on behalf of
Mr. Jose Lizardi during 2014.

8

is voidable under New York law. *See* Item 10.b of the Amended Statement of Financial Affair. Docket No. 43.

29.    Debtor's filing of the present case, despite its temerarious attitude in the First Bankruptcy Case in New York by transferring assets of the estate for the creation of a limited liability company in Puerto Rico, is tantamount to a "bad faith filing". Given that no material circumstances have changed since the dismissal of the First Case (other than frustrating the creditors efforts in the First Case), and in light of the fact that the case at bar was filed solely as a litigation tactic, the Court should dismiss the instant case pursuant to 11 U.S.C. §1112(b). In addition, an order barring Debtor from re-filing bankruptcy within the next year should be entered in accordance with 11 U.S.C. §§ 105(a) and 349(a).

## APPLICABLE LAW
## DISMISSAL FOR CAUSE

30.    The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor, *Grogan v. Garner*, 498 U.S. 279, 286,287 (1991), *Marrama v. City of Massachusets*, 549 U.S. 365 (2007). In *Marrama, Id*., the Supreme Court faced the issue on whether a debtor who acts in bad faith prior to, or in the course of filing a Chapter 13 by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain a chapter 13 relief.

31.    The debtor in *Marrama, Id*., while disclosed that was the sole beneficiary of the trust that owned the property – which was his principal asset, and listed its value as zero; denied that transferred any property other than the ordinary course of business during the year prior to the filing of his petition.  Neither statement was true.  The Supreme Court confirmed the dismissal of the petition for bad faith, the dismissal also denied Debtor's

request for conversion to a Chapter 13.  Citing *Grogan v. Garner* 498 U.S., at 287, the Court

added:

> In practical effect, a ruling that an individual's chapter
> 13 case should be dismissed or converted to a chapter 7
> because of prepetition bad- faith conduct, including fraudulent
> acts committed in an earlier chapter 7 proceeding, is
> tantamount to a ruling that the individual does not qualify as a
> debtor under Chapter 13.  That individual, in other words, is
> not a member of the class of 'honest but unfortunate
> debtor[s]'" 'that the bankruptcy laws were enacted to protect'.

32.    Section 1112(b) of the Bankruptcy Code, 11 USC § 1112(b), states that upon request

of a party in interest, and after notice and a hearing, absent unusual circumstances

specifically identified by the court that establish that the requested conversion or dismissal

is not for the best interests of the creditors and the estate,  the court shall convert or

dismiss a case, whichever is in the best interests of the creditors and the estate, if the

movant establishes <u>cause,</u> unless the court determines that the appointment of a trustee or

an examiner is in the best interests of the creditors and the estate.   7 <u>Collier on Bankruptcy</u>

¶1112.04 [5][o][p]p. 1112-52, 112-55(15th Ed. Rev., 2008).

33.    Determination as to whether cause exists to convert or dismiss Chapter 11 case

pursuant to 11 USCS §112(b) rests within the sound discretion of the court*,  In re Santiago*

*Vela* (1988, BC DC Puerto Rico) 87 BR 229, 17 BCD 283, 88-1 USTC P 9253, 61 AFTRR

2d.698.

34.    Dismissal "for cause" includes a number of enumerated factors, 11 U.S.C. §

1112(b)(4). The party requesting dismissal need only "demonstrat[e] the existence of any

one of the statutory grounds for conversion that are enumerated in section 1112(b) of the

Bankruptcy Code, or by showing other cause." *In re Santiago Vela*, 87 B.R. 229, 231 (Bankr.

D.P.R. 1988).The moving party need not establish a "'perfect storm' of all the elements constituting cause;" one enumerated element may suffice. *In re TCR of Denver, LLC*, 338 B.R. 494, 499 (Bankr. D. Colo. 2006).

35.    Factors listed in 11 USCD § 1112(b) are not exhaustive, and bankruptcy court has wide discretion to determine if cause exists to convert or dismiss Chapter 11 cases. *In re Tornheim* (1995, BC SD NY) 181 BR 161, app. Dismd (1996, SD NY) 1996 US Dist. Lexis 1952. "[I]n fact the court is not limited to the enumerated grounds in making its determination of [cause for dismissal]." *In re (Ionic Realty Trust,* 909 F.2d 624, 626 (1st Cir. 1990) (citations omitted); See also *In re Gucci*, 174 H.R. 401, 409 (Bankr. S.D.N.Y. 1994) ("causes" listed in Section 1112(b) are non-exhaustive).

36.    Also, the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *In re Casse, 198 F.3d 327, 334 (2d Cir. 1999)*; see *In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1310 (2d Cir. 1997) See Clear Blue Water LLC,476 B.R. 60,66 (E.D. NY 2012).*

37.    While 11 U.S.C. § 1112(b) permits dismissal of a reorganization "for cause", this term is not defined in the statute so to afford flexibility to bankruptcy courts. See *In re New Rochelle Tele. Corp., 397 B.R. 633 (Bankr. E.D.N.Y. 2008)*. A bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause.*Clear Blue Water LLC,476 B.R. at 67.*

38.    The District Court of New York emphasized in *Clear Blue Water LLC,Id.,* that:

> A prime example of the type of consideration not explicit in the statute but nevertheless a proper concern for a bankruptcy court, is good faith. It is not precisely clear whether a dismissal on the ground of good faith is "for cause" under *section 1112(b)* or if it occupies its own distinctive niche in bankruptcy law. See

> Collier, § 1112.079[1]; § 1112.07[2] ("While the focus of good
> faith upon the subjective intent of the debtor may distinguish
> lack of good faith as a basis for dismissal from most of the
> causes enumerated in *section 1112(b)(4)*, courts have often
> used lack of good faith as a "cause" for relief under *section
> 1112(b)*."). Cf. *In re Hammersmith Trust, LLC, 243 B.R. 795, 800
> (Bankr. M.D. Fla. 1999)* ("It is now well established that
> evidence of an intent to abuse or misuse the reorganization
> process is sufficient 'cause' to warrant the dismissal under
> *1112(b)* of the Code."). (Emphasis added)

39.     *In Clear Blue Water LLC,476 B.R. at 67,* the court also noted that ("The bankruptcy

court may dismiss a Chapter 11 [petition] for any reason cognizable to the equity power

and conscience of the court as constituting an abuse of the bankruptcy reorganization

process.") (internal citations omitted); *In re Victory Constr., 9 B.R. at 549, 558 (Bankr. Cal.

1981)* ("the perimeters of [the Code] mark the borderline between fulfillment and

perversion; between accomplishing the objectives of rehabilitation and reorganization, and

the use of these statutory provisions to destroy and undermine the legitimate rights and

interests of those intended to benefit by this statutory policy.

40.     Once the Court determines that "cause" exists, the case must be converted or

dismissed unless the debtor meets its burden under 11 U.S.C. § 1112(b)(2) of

demonstrating "unusual circumstances" that establish that conversion or dismissal is not in

the best interests of creditors and the estate. In addition to showing unusual circumstances,

to meet its burden the debtor (or a creditor) must show that there is a reasonable

likelihood that a plan will be confirmed within a reasonable period of time, and the grounds

for conversion or dismissal include an act or omission of the debtor other than under

paragraph (4)(A) for which there exists a reasonable justification for the act or omission,

and that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. §

1112(b)(2); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007).

41.     Stated differently, § 1112(b) mandates the court dismiss or convert a Chapter 11 case where some of the acts or omissions identified in § 1112(b)(4) exist. Dismissal or conversion is subject to some limited exceptions. "Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)." *In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006); *see In re Veltmann*, 2007 WL 4191736, *3 (Bankr. D.N.M. 2007) ("once sufficient cause has been demonstrated, dismissal or conversion is mandatory"); *In re Julian*, 2012 WL 506573, (Bankr. D. Conn. 2012).

42.     Another ground for dismissal under section 1112(b) is whether the case was filed in "bad faith". While "bad faith" is not specifically listed as a "cause" under section 1112(b), the same may serve as grounds for dismissal or conversion. *In re Charfoos* 979 F.2d 390, 392-393 (6th Cr. 1992); *In re Harvey Rd. Assoc. VIII* 140 H.R. 302, 305 (Haar. D. Mass. 1992); lure *Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985). See also, Collier, ¶1112.04[6][b] ("the list of the items that constitute cause is not exclusive and the use of the word 'and' at the end of section 1112(b)(4)(0) is a scrivener's error").

43.     Several courts have found that bad faith filing is a "cause" for dismissal under *11 U.S.C. § 1112(b).  In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984)*. The determination of cause for dismissal under *§ 1112(b)* is subject to judicial discretion under

the circumstances of each case. *Id.In re Northwest Place LTD*, 108 B. R. 809, 814, 1988 U.S.

Dist. LEXIS 17287.

44.     In discussing the concept of bad faith, the Eleventh Circuit has stated that:

>        In finding a lack of good faith, courts have emphasized an intent
> to abuse the judicial process and the purposes of the reorganization
> provisions. Particularly when there is no realistic possibility of an
> effective reorganization and it is evident that the debtor seeks merely
> to delay or frustrate the legitimate efforts of secured creditors to
> enforce their rights, dismissal of the petition for lack of good faith is
> appropriate. *See In re Eden Associates, 13 B.R. 578, 583-85 (Bankr.
> S.D.N.Y. 1981)*; *In re Victory Construction Co., Inc., 9 B.R. 549, 555-56, 558,
> 564-65 (Bankr. C.D. Cal. 1981)*;  *In re G-2 Realty Trust, 6 B.R. 549, 552-54
> (Bankr. D. Mass. 1980)*; *In re Dutch Flat Investment Co., 6 B.R. 470, 471-
> 72 (Bankr. N.D. Cal. 1980)*; *See also In the Matter of Levinsky, 23 B.R. 210,
> 219-220 (Bankr. E.D.N.Y. 1982)*; *In the Matter of Northwest Recreational
> Activities, Inc., 4 B.R. 36, 38-40 (Bankr. N.D.Ga. 1980)*.

*Albany Partners, 749 F.2d at 674. Nortthwest*, 108 B.R. at 814.

45.     Generally, however, findings of bad faith in proceedings based on *§§ 362(d)* or

*1112(b)* have been predicated on certain recurring but non-exclusive patterns, and they are

based on a conglomerate of factors rather than on any single datum.  *Little Creek, 779 F.2d.*

*at 1072*.

46.     In reaching a determination of whether a case has been filed in bad faith, courts

have considered the following factors:

1. **Whether the debtor has few or no unsecured creditors;**
2. **Whether there has been a previous bankruptcy
   petition by the debtor or a related entity;**
3. **Whether the pre-petition conduct of the debtor has
   been improper;**
4. **Whether the petition effectively allows the debtor to
   evade court orders;**
5. Whether there are few debts to non-moving creditors;
6. Whether the petition was filed on the eve of foreclosure;

14

7. Whether the foreclosed property is the sole or major asset of the debtor;

8. **Whether the debtor has no ongoing business or employees;**

9. **Whether there is no possibility of reorganization**;

10. **Whether the debtor's income is not sufficient to operate;**

11. **Whether there was no pressure from non-moving creditors**;

12. **Whether reorganization essentially involves the resolution of a two-party dispute**;

13. **Whether a corporate debtor was formed and received title to its major assets immediately before the petition**; and

14. **Whether the debtor filed solely to create the automatic stay**.
    *Grieshop, 63 Bankr. at 663*. (Emphasis added).

47.   At the root of any definition is a debtor's respect for the underlying goals and policies encouraged by bankruptcy law. Bad faith filing of a bankruptcy petition involves using the process in such a way that the underlying policy of securing an orderly and *fair*adjustment of the relationship between debtor and creditors cannot be realized. *Id. Nortthwest*, 108 B.R. at 815.

48.   The courts will usually also consider the following factors in order to determine whether a particular case was filed in bad faith: "(1) **when the petition is filed merely as a litigation tactic; (2) when the petition was filed solely to frustrate the legitimate efforts of other parties to enforce their rights;** (3) when the debtor lacks a valid reorganizational purpose; and (4) when the debtor's sole motive is to avoid a contract." In re Walden Ridge Dev. LLC, 292 B.R. 58, 62 (Bart. D.N.J. 2003).

49.   After the enactment of the Bankruptcy Abuse Prevention Act (2005), similar factors have being considered to determine whether they are faced with a bad faith filing are:

15

a)    The debtor has few or no unsecured creditors;
b)    The debtor has previously sought relief;
c)    The petition was filed on the eve of foreclosure;
d)    The foreclosed property is the sole or major asset of the debtor;
e)    The debtor has no ongoing business;
f)    The debtor has no ability to reorganize;
g)    The reorganization involves a two party dispute;
h)    The corporate debtor was formed to effectuate the filing;

*In re Reyes Ramos,* 2006 Bankr. LEXIS 3817, 7-8 (Bankr. D.P.R. Jan. 13, 2006);

Harvey Rd.,140 B.R. at 305.

50.    "Good faith is an abstract idea generalized from particular circumstances". Therefore, its determination should not necessarily be limited to a mechanical checklist analysis and should be construed, among other things, on a consideration of conduct that constitutes an abuse of the bankruptcy process, as well as the equities of the case. *Marrama v. Citizens Bank,* 549 U.S. 365, 375, fn. 11, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). Also, the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. *11 U.S.C. § 521(1).* "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n, 932 F.Supp. 859, 867 (E.D.Tex. 1996). In re Roden* 525 BR 620(*(Bankr. W.D. La.,* 2015)

51.    The premise of the good faith standard is that bankruptcy relief should generally be limited only to the "honest but unfortunate debtor." *Brown v. Felsen, 442 U.S. 127, 128, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979)* (quoting *Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)).* "Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual." *In re Rognstad, 121 B.R. 45, 50 (Bankr. D. Haw. 1990)*; see *Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 198. Clear Blue Water 476 B.R. at 70.,*where the court concluded that there was

sufficient circumstantial evidence to determine that the Chapter 11 Debtor was not an honest but unfortunate debtor; but rather was a debtor whose principals or agents had, in some capacity engaged in fraudulent conduct when contracted a mortgage loan.

52.    The court added that when a a case presented circumstances that are somewhat analogous to cases where the courts have found the standard of good faith to be lacking when the bankruptcy was used a vehicle to defraud others. *Clear Blue Water 476 B.R. at 72* See, also  e.g., *In re Coastal Cable* [*72] *T.V., Inc., 709 F.2d 762, 764, 765 (1st Cir. 1983).*

53.    When a motion is filed to dismiss a case for cause, the moving party carries the burden of demonstrating that such cause exists by a preponderance of the evidence. See *In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) Clear Blue Waters,* 476 B.R. at 68.  In considering whether a case has been filed in bad faith (or whether there exists lack of good faith), "then it is the movant that must establish *prima facie* that the petition wasfiled in bad faith before the burden shifts to the debtor [to show that the case was filed in good faith]. *In re Costa Bonita Beach Resort,* 479 B.R. 14, 39, (Bankr. D.P.R. 2012).

54.    "The determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances." *Id.* at 40 (Emphasis original). See also *Farnsworth v. Morse (In re Farnsworth),* 2009 Bankr. Lexis 3699, (B.A.P. 1st Cir. 2009); *Marrama v. Citizens Bank of Mass. (In re Manama),* 430 F. 3d. 474, 482 (1st Cir. 2005) affd, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

**DEBTOR'S UNDISCLOSED TRANSFERS**

55.    Even when is the US Trustee the one entitled to bring actions for fraudulent transfers, the actions taken by the Debtor, as presented by the public records and the

notices of withdrawals provided by Charles Schwab, fall within the actions prohibited by the Bankruptcy Code as discussed by the case law.  Such transfers, considered within the totality of the circumstances construe bad faith for the filing and cause to dismiss the instant petition.

56.    Transfer is defined in section 101(54) of the Code, as amended by the 2005 Amendments, to mean "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) **each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with (i) property; or (ii) an interest in property."** *Black & White Cattle Co. v. Granada Cattle Servs.,  Inc. (In re Black & White Cattle Co.),* 783 F.2d 1454, 1462 (9th Cir. 1986) (Code definition of transfer "expressly encompasses transfers of an interest in property as distinct from transfers of the property itself."); *Claussen Concrete Co. v. Walker (In re Lively),* 74 B.R. 238, 239 (S.D. Ga. 1987) (judgment lien is transfer of an interest of debtor in property), aff'd, 851 F.2d 363 (11th Cir. 1988). *See also Bustamente v. Johnson (In re McConnell),* 934 F.2d 662, 664 (5th Cir. 1991) ($600,000 down payment is "transfer" subject to § 548 notwithstanding failure to close deal; court rejected argument that no transfer occurred because debtor's default on contract extinguished his equitable interest); *see, e.g., Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir. 1997) (Chapter 7 debtor's grant of deed of trust on her residence to her mother was "transfer" of property); *Levine v. Weissing (In re Levine),* 134 F.3d 1046, 1050 (11th Cir. 1998) (held, debtors' conversion of funds from non-exempt to exempt status through purchase of annuities constituted "transfer" for purposes of Florida fraudulent transfer law); *Parker v.  Saunders (In re Bakersfield Westar, Inc.),* 226 B.R. 227, 230 (B.A.P. 9th Cir. 1998) (held, otherwise valid

18

revocation of corporation's subchapter S election immediately prior to bankruptcy voidable as fraudulent transfer; IRS had unsuccessfully argued that Subchapter S election was not a property interest because it had no "present value"); *In re Pulliam,* 279 B.R. 916 (Bankr. M.D. Ga. 2002) (debtor withdrew funds from IRA with intent to pay creditors; after advice of lawyer that funds were exempt property, debtor re-deposited funds into IRA; held, rollover qualified as transfer because made with actual intent to hinder, delay, or defraud creditors); *Duncan v. Duncan (In re Duncan),* 329 F.3d 1195 (10th Cir. 2003) (attorney transfers property to himself and wife as tenants by the entirety during legal malpractice action; prior to entry of a final judgment, attorney files chapter 7; held, debtor barred from seeking state homestead and tenancy by the entirety exemptions under section 522(g) because transfer of property was voluntary and made with the intention to avoid creditors)

57.   *In Marine Midland Bank v. Stein,* 105 Misc. 2d 768, 433 N.Y.S.2d 325 (Sup. Ct. N.Y. County 1980), Debtor transfers real property to a closely held corporation owned by his three children for "love and affection," when transfer renders him insolvent.;*see also Walker v. Treadwell (In re Treadwell),* 699 F.2d 1050 (11th Cir. 1983).   In *Tanner v. Smoot,*257 F.3d 401 (4th Cir. 2001*), cert. denied Smoot v. Tavenner,* 534 U.S. 1116 (2002) (debtor, claiming motivation of "love and affection", **transfers exempt property to family-owned corporation, but court holds that transfer was fraudulent because made with intent to hinder, delay or defraud creditors)**; *In re Marlar,* 267 F.3d 749 (8th Cir. 2001) (no reasonable equivalent value when debtor transferred 700 acres of farmland to son for ten dollars plus love and affection).

58.   Moreover, a number of "badges of fraud" have been employed by courts to determine whether actual intent to defraud exists: (1) a transfer of all the debtor's property; (2)

retention of possession of property by the debtor, although title exists in another entity; (3) secrecy of the transfer; (4) existence of a trust between the debtor and the person to whom the property is conveyed; (5) transfer of the property while a suit against the debtor is pending; (6) the instrument effecting the transfer suspiciously states that the transfer is in fact bona fide; (7) consideration for the transfer is inadequate; and (8) the debtor makes a gift to a family member. *See Twyne's Case*, 3 Coke 80b, 76 Eng. Rep. 809 (Star Chamber 1601).

*See also Marc Rich & Co., A.G. v. United States (In re Grand Jury Subpoena DucesTecum)*, 731 F.2d 1032, 1041 (2d Cir. 1984) (fraudulent nature of transfer may be inferred from relationship among parties and secrecy of sale; other "badges of fraud" include hasty, unusual transactions not in usual mode of doing business, and use of dummies or fictitious parties); ***Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983) (transfer of property by debtor to spouse while insolvent, and shifting of assets by debtor to corporation he controls, are badges of fraud);*** *Continental Bank v. Modansky*, 159 B.R. 129 (S.D.N.Y. 1993), aff'd, 41 F.3d 1501 (2d Cir. 1994) (when corporate guarantor transferred real estate to wife for unfair consideration while corporation was unable to pay debts as they came due, court held that timing and other circumstances of transfer warranted finding that transfer was made with actual intent to defraud creditors under N.Y. Debt. & Cred. L. § 276-a).

59.   In *ACLI Gov't Sec., Inc. v. Rhoades,* 653 F. Supp. 1388, 1395 (S.D.N.Y. 1987) the court held that the transfer of real property from judgment debtor to his sister had "classic indicia of fraudulent intent": **secret intrafamily transfer for inadequate consideration made nine days after jury verdict against judgment debtor),** aff'd mem., 842 F.2d 1287 (2d Cir. 1988). *United States v. Gleneagles Inv. Co.,* 565 F. Supp. 556, 580 (M.D. Pa. 1983) (when

transferor and transferee have knowledge of creditors' claims and know creditors cannot be paid, and when consideration for transfer is lacking, court may infer intent to hinder, delay, or defraud creditors), *aff'd sub nom. United States v. Tabor Court Realty Corp.,* 803 F.2d 1288 (3d Cir. 1986), <u>cert. denied,</u> 483 U.S. 1005 (1987); *Hadar Leasing Int'l Co. v. D.H. Overmyer Telecasting Co. (In re D.H. Overmyer Telecasting Co.),* 23 B.R. 823 (Bankr. N.D. Ohio 1982) (transfer by corporate debtor to other corporation when both entities were controlled by same individual constituted "badge of fraud"), aff'd, 53 B.R. 963 (N.D. Ohio 1984), aff'd, 787 F.2d 589 (6th Cir. 1986). Usually, more than one "badge of fraud" must be present to establish a pattern strong enough for a court to find actual intent. *Kleinfeld v. Sun Land Properties, Inc. (In re Kranich),* 53 B.R. 821, 823 (Bankr. M.D. Fla. 1985) (**when badges of fraud "exist in combination, they 'may by their number and joint consideration be sufficient to constitute conclusive proof' of fraud"**) (citation omitted);

60.    In *Securities and Exchange Comm'n v. Whitworth Energy Resources Ltd.,* 26 Fed. Appx. 723, at 1 (9th Cir. Jan. 18, 2002) the court determined that **badges of fraud included transfer to an insider(debtor's mother); threat of suit when transfer occurred; son's retained control over property by mother's failure to record deed; transfer was concealed; and no reasonable equivalent value received (i.e., mother promised not to sue son)**);*Shelley v. Doe,* 671 N.Y.S.2d 803, 806 (App. Div. 3d Dept 1998) (finding that enough indicia of fraud exist to warrant hearing on factual issues when the record shows "hurried, nonbusiness transfer between brothers, which must be scrutinized carefully, at a time when [the transferor brother] was under an indictment which would clearly expose him to criminal liability.").

61.   The case law has delineated that once multiple badges of fraud have been established, the trustee is entitled to a presumption of fraudulent intent and the burden shifts to the transferee to prove some "legitimate supervening purpose" for the transfers at issue. *Kelly v. Armstrong,* 206 F.3d 794, 798 (8th Cir. 2000) (citations omitted); *Village of San Jose v. McWilliams,* 284 F.3d 785 (7th Cir. 2002) (debtors' attempts "to conceal, remove or destroy property cannot be later cured by remedial conduct, including undoing any transfers, if the [original] transfers occurred within one year of filing the bankruptcy petition[16]."); *In re Triple S Restaurants, Inc.,* 422 F.3d 405, 414-16 (6th Cir. 2005) *(held,* pre-petition transfer of life insurance policy from debtor to trust displayed several badges of fraud, shifting burden of proof to insurance policy beneficiary to show transfer did not harm debtor's unsecured creditors; "the burden of proof may shift even where consideration has not been shown to be inadequate").

## DEBTOR'S ACTS DURING HIS FIRST BANKRUPTCY PETITION

62.   Debtor's transfers during his first bankruptcy petition are documented by his filings with the New York Bankruptcy court and the public records at the Registry of the Property in Puerto Rico.  The transfers made during 2014 and 2015, not disclosed in this petition, are documented by Charles Schwab notices in compliance with the order issued by the New York State Court.

63.   According to the Monthly Operating Reports, during his first bankruptcy petition, including the $50,000 "owner's draw" as described above, Debtor disbursed a total of $112,171.30 for his personal expenses between January and September, 2013. In addition,

---

[16]The amendments brought by the Bankruptcy Abuse Prevention Act of 2005 extended the lookback period to tow (2) years prior to the filing of the petition.  See 11 U.S.C. § 548(a)(1).

he transferred $159,406.43 to his personal checking account. Moreover, the Debtor's bank statements show multiple transactions on behalf of the Debtor's son and other individuals.

64.     During the month of September 2013 only, as reflected in the operating report filed with the bankruptcy court in New York in the case 12-62352, Debtor ordered owners draws in the amount of $58,557.33, transferred $18, 259.28 to personal account; made $30,864.13 in payments to his pension plan; transferred $18,795.36 to an unknown "PR ending 9/"and a wire transfer directly to Ana Grana $1,059.28.  all of this transactions were additional to and considering that the payments of Dr. Lizardi current expenses were paid directly from his medical office accounts. *See* Docket No. 151 of Bank Case No. 12-62352.

65.     Debtor's excessive expenditures during the first bankruptcy petition were considered unreasonable and catalogued as gross mismanagement of the estate by the US Trustee on the first case.  Truth to be told was that the multiple unexplained transactions were in fact the transfer of the moneys to third persons and <u>the creation of a corporate entity, out of the state of New York and out of the reach of the creditors</u>.

66.     The Debtor's actions during his first bankruptcy petition evidence his intent to hinder, delay and defraud his creditors by transferring, removing and concealing his property through the creation of a new corporate entity. Everything within two years before the filing of the bankruptcy petition, in fact during the pendency of his first bankruptcy petition, including, but not limited to:

> (a) Transferring to Pilates Gyn, LLC, amounts sufficient to purchase the two properties as described above;
> (b) Transferring moneys, property of the estate on the case 12-062352 to his personal accounts and,

(c) Failing to disclose the transfers in favor of his stepdaughter, Ana Grana Morales, as described in the notices of withdrawal in compliance with order, in Schedule B, the statement of financial affairs, and any amendments thereto.

67.    Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account, including, but not limited to:

(a) Signing under penalty of perjury the bankruptcy schedules, statement of financial affairs, and amendments thereto filed in this case attesting that the information therein was true and correct, but failing to list therein his investment in Pilates Gyn LLC nor the transfers of monies and the vehicle within two years prior to the filing of the bankruptcy petition; and

(b) Testifying under penalty of perjury at the meeting of creditors that the schedules and any amendments thereto filed in the captioned case were true and correct to the best of his knowledge and belief.

68.    The action of transferring monies and assets from the first bankruptcy estate to create an entity aside from the reach of his creditors, and the actions taken by Debtor after the dismissal of the first bankruptcy to continue transferring monies to a third person's bank accounts reveals Debtor's intent to conceal assets from creditors and from this bankruptcy estate, this intention to embezzle funds against the estate, and his adverse interest conduct; which constitutes a breach of his fiduciary duty under the provisions of Sections 151 to 158 of Title 18.  The transfer of monies to Pilates Gyn, LLC is not an ordinary course of business transaction was not informed nor authorized by the bankruptcy court and; the company doesn't even operate a business at the time of the filing of this motion to dismiss.  Debtor received no equivalent value for the funds transferred for the purchase of the properties; right now only owns shares of a non operating business.  In any case, discovery upon the corporate books of Pilates Gyn, LLC will be needed to corroborate any defense of real investment, real business operation and real value.  Besides, the fact that the first bankruptcy case was dismissed does not erases the

24

fraudulent actions taken by the Debtor to conceal the assets from its creditors.  In addition,
the actions, within the two years from the filing of the second petition, were hidden from
the Bankruptcy Schedules and Statement of Financial Affairs in this case.

**69.**     Upon examination of the totality of the circumstances of this case, there is no doubt
that Debtor's filing of the instant Chapter 11 petition constitutes a "bad faith filing" for the
following reasons:

a.     Debtor had previously sought bankruptcy relief and was a debtor-in-possession as part of the First Case, <u>less than a year and four months from the filing of the instant case.</u>

b.     The first bankruptcy petition was dismissed for cause on a determination on Debtor's substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  The discussion  in the court in New York didn't requested any explanation from the Debtor and, the creditors, the US Trustee or the Court's didn't have knowledge of Debtor's transfers of the funds to a Limited Liability Company in Puerto Rico, which constituted hiding (concealing) his assets from the creditors and breaching his fiduciary duty to the estate.  The first bankruptcy petition was used to conceal debtor's assets while the creditors could not reach them because of the protection granted by the automatic stay.

c.     Debtor has failed to demonstrate that his financial condition has improved in comparison to his condition as of December 31, 2013, when the first petition was dismissed.  Besides, Debtor already admitted in his Disclosure Statement that the new "alleged" business venture, Pilates Gyn LLC, has no business whatsoever;

d.      Debtor does not possess a valid reorganization purpose, more than the discharge of debts.  The only significant asset brought to the estate is claimed as exempt and no income from business has been reported.  Property that still exists attached to his name because of the issue as to the ownership and the order to freeze the amounts entered by the State court of new York in the case of <u>Skelly Hand, et al v. Lizardi</u>, St. Lawrence County IAS#44-1-2003-0156, Index 111075. Debtor is shielding himself behind the guise of his related company Pilates Gyn, LLC to maintain the real property purchased in Puerto Rico without any real operation of business, and no disclosure of the transfers to his Stepdaughter, Ana Grana Morales was ever provided. See Operating Reports filed on the instant case.

e.      The instant case was filed exclusively as a litigation tactic given that, through the dismissal of the First Case (which dismissal was a direct result of Debtor's willful intent to use the bankruptcy protection to take away his money, under the appearance of negligence and inability to reorganize), Debtor was able to curtail the efforts of its more active and vocal creditor in the First Case, and;

f.      This second bankruptcy case was filed on the eve of the final hearing in the state court of New York to determine the ownership of funds frozen in the Charles Schwab accounts.  Important to note that since January 2014 through April 2015, Debtor withdraw and transferred most of the funds, not frozen on such accounts, to his stepdaughter, with the only intent to frustratethe creditors collection efforts.

70.   Based on the foregoing, we can observe that this new bankruptcy case serves no legitimate reorganization purpose, but was rather filed as an abuse of the bankruptcy

process, as well as a litigation tactic, to (i) frustrate the Hands' efforts in the First Case, (ii) attempt to thwart collection through the execution of judgment process, and (iii) attempt to curtail the Hands (and other creditors') non-bankruptcy remedies in State Court. Moreover, Debtor has not been able to demonstrate which deficiencies have been corrected from the First Case, nor whether any progress has been made towards reorganization since the dismissal of the First Case and the filing of the instant case.

71.     It is the Hands' position that Debtor has prosecuted the instant case with temerity and with the sole intent to hinder and delay creditors' collection efforts. It appears that Debtor's intention in filing two consecutive bankruptcies is not to obtain the confirmation of a Plan, but rather to frustrate the collection efforts of its creditors, including Debtor's attempt to hide from the creditors the remaining funds that could not transfer prior to the filing of the instant case because were frozen by a court order pending for trial.

72.     On determining whether a case is filed in bad faith as a litigation tactic should be converted or dismissed depends on which of those two alternatives is in the best interest of the creditors and the estate.   Where an individual debtor had substantial future earning capacity, creditors would have fared worse if the case were converted to chapter 7 because the debtor would have received a discharge. *Shulkin Hutton, Inc. P.S. v. Treiger*, 552 F. 3d 985 (9th Cir. 2009)As in *Clear Blue Water* 476 B.R. 60 (2012), there are sufficient allegations of fraud in this case, and they are closely enough related, to warrant the dismissal of the case.

73.     The Debtor will be unable to demonstrate "unusual circumstances" that can overcome the examples of cause sufficient to dismiss this case. Therefore, dismissal is in the best interests of creditors and the estate.

74.   Even when the arguments herein presented might be grounds for denying debtor's discharge, dismissal is better served for the creditors.   Debtor is contesting the classification of the monies frozen at a Charles Schwab account in New York as exempted property of the estate, which in fact are Debtor's only funds available to finance his plan of reorganization.   Therefore, no guaranty of distribution is available for the creditors. Conversion of the case neither benefit the creditors since, such monies will not be available either.   Instead, actions to recover transfers in fraud of creditors can be presented outside of the bankruptcy case.

75.   In light of the above, the equities favor dismissal of this case. See, *Costa Bonita*, 479 B.R. at 39 - 41. Finding otherwise would essentially "reward" Debtor's blatant actions, as discussed above, given that the continuation of the instant case will essentially preclude creditors from enforcing their applicable non-bankruptcy law remedies. Sufficient elements are met and justifies cause for the dismissal of this case under 11 U.S.C. § 1112(b)(4)(B).

**BAR TO RE-FILE UNDER SECTIONS 349 AND 105:**

76.   Section 349(a) of the Code states, at its pertinent part that:

> **Unless the court, for cause, orders otherwise,** the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a) (Emphasis supplied).

77.   Section 349(a) "empowers bankruptcy courts to enjoin future filings if cause exists to do so." In re Balmer, 2003 Bankr. LEX1S 2407 (Bank. E.D. Ark. 2003). Specifically, it "gives a bankruptcy judge discretion to 'order otherwise' for cause and to dismiss a petition with prejudice". In re Weaver 222 B.R. 521, 522 (Bankr. ED. Va. 1998) "[This

discretion may be exercised either to prohibit the filing of a petition within a set time, or it

may preclude the debtor from receiving a discharge in bankruptcy of debts in existence

when the case is dismissed." *Id.*

78.   The Court's discretionary authority to issue a bar to re-file under section 349(a) is

further complemented by section 105(a) of the Code, which "permits a bankruptcy court to

enter any Order necessary to carry out the provisions of the Code and to prevent an abuse

of the bankruptcy process..." In re Balmer 2003 Bankr. LEXIS 2407 (Barth. ED. Ark. 2003);

11 U.S.C. §105(a).

   **WHEREFORE**, based on the foregoing, the appearing creditors respectfully

requests that the Court enter an order dismissing this Chapter 11 case, pursuant to 11

U.S.C. § 1112(b), in addition to set a refiling bar of one year, and granting such other and

further relief as this Court deems just and proper.

   Included as **Exhibit 18,** is the Department of Defense Manpower Data Center
Military Status Report.

## NOTICE OF TIME TO RESPOND

   Within fourteen (14) calendar days after service as certified
below, or such other time as the court may order hereafter, the Debtor
shall serve and file an objection or other appropriate response to this
motion with the Clerk's Office of the U.S. Bankruptcy Court for the
District of Puerto Rico. If no objection or other response is filed within
the time allowed herein, the motion will be deemed unopposed and
may be deemed automatically granted, unless: (1) the requested relief
is forbidden by law; (2) the requested relief is against public policy; or
(3) in the opinion of the Court, the interests of justice require
otherwise.

## CERTIFICATE OF SERVICE

   I hereby certify that on this same date, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to
**Carmen Conde Torres** counsel for the Debtor, the US Trustee and to all CM/ECF

participants and to all parties in interest not register to CM/ECF through first class mail as per the master address list; Counsel for Debtor and US Trustee were also notified by Certified Mail.

In San Juan, Puerto Rico, this 29 day of September, 2015.

**GOLDMAN ANTONETTI & CORDOVA, LLC.**
ATTORNEYS FOR CREDITOR,
**Susan Skelly- Hand, Patrick Hand and Rachel Hand**
American International Plaza, 14th Floor
250 Muñoz Rivera Avenue
San Juan, PR 00918
Tel: (787) 759-4213
Fax: (787) 474-2335

*/s/ Solymar Castillo Morales*
Solymar Castillo Morales
USDC-PR #218310
e-mail: scastillo@gaclaw.com

```
Label Matrix for local noticing      DEPARTAMENTO DE HACIENDA           INTERNAL REVENUE SERVICE
0104-3                               PO BOX 9024140                     CENTRALIZED INSOLVENCY OPERATIONS
Case 15-03076-ESL11                  OFICINA 424-B                      PO BOX 7346
District of Puerto Rico              SAN JUAN, PR 00902-4140            PHILADELPHIA, PA 19101-7346
Old San Juan
Mon Sep 28 16:40:43 AST 2015

PR DEPARTMENT OF LABOR               US TRUSTEE                         US Bankruptcy Court District of P.R.
PRUDENCIO RIVERA MARTINEZ BLDG       EDIFICIO OCHOA                     Jose V Toledo Fed Bldg & US Courthouse
505 MUNOZ RIVERA AVENUE              500 TANCA STREET SUITE 301         300 Recinto Sur Street, Room 109
12 FLOOR                             SAN JUAN, PR 00901-1922            San Juan, PR 00901-1964
SAN JUAN, PR 00918


ABBEY THOMPSON                       ALLY FINANCIAL                     ASSOC PENSION CONSULTANTS INC
STEPHEN A VANIER ESQ                 BANKRUPTCY DEPARTMENT              PO BOX 1282
367 WEST MAIN STREET                 PO BOX 130424                      CHICO CA 95927-1282
MALONE NY 12953-1751                 ROSEVILLE MN  55113-0004


ASSOCIATES                           ASSOCIATES FINANCE                 AT&T Mobility Puerto Rico, Inc
PO BOX 11917                         PO BOX 11917                       % AT&T Services, Inc
SAN JUAN, PR 00922-1917              SAN JUAN, PR 00922-1917            Karen Cavagnaro, Paralegal
                                                                        One AT&T Way, Room 3A104
                                                                        Bedminster, NJ 07921-2693


ATT                                  Ally Financial                     (p)BMW FINANCIAL SERVICES
PO BOX 5014                          PO Box 130424                      CUSTOMER SERVICE CENTER
CAROL STREAM IL  60197-5014          Roseville, MN 55113-0004           PO BOX 3608
                                                                        DUBLIN OH 43016-0306


CAMBRIDGE MANAGAMENT GROUP INC       CBHV                               CITI CARDS
PO BOX 33887                         PO BOX 831                         PO BOX 11917
SAN DIEGO CA 92163-3887              NEWBURGH NY  12551-0831            SAN JUAN, PR 00922-1917


CITIBANK                             CITIBANK CCSI                      CITIBANK MORTGAGE
PO BOX 11917                         PO BOX 11917                       PO BOX 11917
SAN JUAN, PR 00922-1917              SAN JUAN, PR 00922-1917            SAN JUAN, PR 00922-1917


CITIBANK NA                          CITIBANK SOUTH DAKOTA              CITIBANK USA
PO BOX 11917                         PO BOX 11917                       PO BOX 11917
SAN JUAN, PR 00922-1917              SAN JUAN, PR 00922-1917            SAN JUAN, PR 00922-1917


CITICARDS                            CITICARDS CREDIT SERVICES          CITICARDS SEARS
PO BOX 11917                         PO BOX 11917                       PO BOX 11917
SAN JUAN, PR 00922-1917              SAN JUAN, PR 00922-1917            SAN JUAN, PR 00922-1917


CITICORP DINERS                      CITICORP FINANCE                   CITIFINANCIAL
PO BOX 11917                         PO BOX 11917                       PO BOX 11917
SAN JUAN, PR 00922-1917              SAN JUAN, PR 00922-1917            SAN JUAN, PR 00922-1917
```

CITY TREASURER
DELINQUENT ACCOUNT COLLECTION PROGRAN
PO BOX 129039
SAN DIEGO CA  92112-9039

COND SURFSIDE MANSION
AVE ISLA VERDE 3307
CAROLINA PR 00979-4937

DAVID BORTZ MD
PO BOX 390005
SAN DIEGO CA 92149 0005


DEPTO JUSTICIA DE PR
APARTADO 9020192
SAN JUAN PR 00902 0192

DORAL FINANCIAL CORPORATION
LOPEZ SANCHEZ PIRILLO & HYMOVITZ LLC
PO BOX 11917
SAN JUAN, PR 00922-1917

EXCELLUS HEALTH PLAN
PO BOX 5266
BINGHAMTON NY   13902-5266


(p)FIRST NIAGARA BANK
PO BOX 514
LOCKPORT NY 14095-0514

HSBC BANK
2929 WALDEN AVE
DEPEW NY 14043-2690

HSBC MORTGAGE
BANKRUPTCY DEPARTMENT
636 GRAND REGENCY BOULEVARD
BRANDON FL 33510-3942


IRS
CITIVIEW PLAZA NO II
48 CARR  165  SUITE 2000
GUAYNABO PR  00968-8000

IRS
PO BOX 7346
PHILADELPHIA PA  19101-7346

LIBERTY CABLEVISION PR
PO BOX 192296
SAN JUAN PR 00919 2296


(p)NBT BANK NA
52 SOUTH BROAD STREET
NORWICH NY 13815-1699

NBT BANK NATIONAL ASSOCIATION
52 SOUTH BROAD STREET
NORWICH NEW YORK 13815-1699

PANAMERICAN/CITIBANK
PO BOX 11917
SAN JUAN, PR 00922-1917


PILATES GYN LLC
COND SURFSIDE MASION
APT  1002
CAROLINA PR 00979-4916

PR DEPTO TREASURY
PO BOX 50072
SAN JUAN PR 00902 6272

PREPA
PO BOX 363508
SAN JUAN PR  00936-3508


RUSSELL BRUCE HUBBARD MD INC
1565 HOTEL CIRCLE S 350
SAN DIEGO CA  92108-3431

SAN DIEGO GAS  ELECTRIC
PO BOX 25111
SANTA ANA CA  92799-5111

SUSAN SKELLY-HAND
PATRICK HAND
PO BOX 524
OGDENSBURG  NY 13669-0524


Susan Skelly- hand, Patrick and Rachel Hand
Goldman, Antonetti & Cordova LLC
250 Muoz Rivera Avenue Suite 1400
San Juan, PR 00918-1824

TRUST OF DECEASED WIFE
TO BE PROVIDED

US DEPARTMENT OF JUSTICE
FEDERAL LITIGATION DIVISION
PO BOX 9020192
SAN JUAN PR 00902-0192


VERIZON WIRELESS
PO BOX 4003
ACWORTH  GA 30101-9004

VOLKSWAGEN CREDIT
PO BOX 17497
BALTIMORE MD 21297-1497

WELLS FARGO BANK NA
PO BOX 19657
IRVINE CA 92623-9657


CARMEN D CONDE TORRES
254 SAN JOSE STREET
5TH FLOOR
SAN JUAN, PR 00901-1523

FEDERAL LITIGATION DEPT. OF JUSTICE
PO BOX 9020192
SAN JUAN, PR 00902-0192

JOSE L LIZARDI ORTIZ
COND SURFSIDE MASIONS
3307 ISLA VERDE AVE
APTO 1105
CAROLINA, PR 00979-4916

LUISA S VALLE CASTRO
C CONDE & ASSOCIATES
254 CALLE SAN JOSE 5TH FLOOR
SAN JUAN, PR 00901-1523

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET  SUITE 301
SAN JUAN, PR 00901

ROSA E RODRIGUEZ VELEZ
US ATTORNEYS
TORRE CHARDON STE 1201
350 CARLOS E. CHARDON AVE
SAN JUAN, PR 00918-2124


            The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
            by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


BMW FINANCIAL SERVICES
PO BOX 3608
DUBLIN  OH  43016-0306

FIRST NIAGARA BANK
6950 SOUTH TRANSIT ROAD
PO BOX 514
LOCKPORT  NY  14095-0514

NBT BANK
6554 STATE HIGHWAY 56
POTSDAM NY  13676


            The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Susan Skelly- Hand, Patrick Hand and Rache

(d)US TRUSTEE
EDIFICIO OCHOA
500 TANCA STREET SUITE 301
SAN JUAN, PR 00901-1922

End of Label Matrix
Mailable recipients    62
Bypassed recipients     2
Total                  64